IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| RALPH DISPENNETT, | ) | Civil No. 98-1252-JO |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| DAVID COOK, Director, Oregon Department of Corrections, | ) ) | |
| | ) | |
| Respondent. | ) | |

C. Renee Manes
Barbara L. Creel
FEDERAL PUBLIC DEFENDER'S OFFICE
101 S.W. Main Street, Suite 1700
Portland, OR 97204

  Attorneys for Petitioner

Thomas J. Castle
Douglas Park
DEPARTMENT OF JUSTICE
Trial Division, Corrections Litigation
1162 Court Street N.E.
Salem, OR 97301-6313

  Attorneys for Respondent

JONES, Judge:

Petitioner, who is currently in the custody of the Oregon Department of Corrections, brings this action seeking a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. He is challenging his underlying convictions for Sodomy, Burglary, Assault, and Attempted Rape on the basis that they violate his rights under the Sixth and Fourteenth Amendments. Currently before this court is petitioner's Motion for an Evidentiary Hearing pursuant to Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts (#241). For the reasons set forth below, petitioner's motion is granted.

## BACKGROUND

This case has a lengthy history before this court. Therefore, a review of the relevant factual and procedural background of the issues is necessary to explain my decision.

### A.  Factual Background

The victim, Pamela Murray, is a mentally impaired woman who was 41 years old at the time of the trial in this matter. In the early morning on September 2, 1993, a man entered her apartment through her open window and sexually assaulted her. Ms. Murray's neighbors, Kathy Roundtree and Herman Andino, heard noises coming from her apartment and called the police. According to the 911 transcript, Murray did not know her attacker. After the police arrived, she told them that a man "tried to rape"and "hurt" her and she gave a generalized description of him to the police. Murray described her assailant as a white male with blonde hair in a pony tail, blue shirt, blue jeans, and white tennis shoes. The officer responding to the scene reported that she said that she knew the man but could not remember his name. She said that she thought he was the same one who worked at a nearby gas station. According to the officer's report, Ms.

Roundtree then asked Murray if she meant "Butch" and Murray responded that she did. From that point onward, the report refers to the suspect as "Butch," which was a nickname of the petitioner, Ralph Dispennett. Mr. Andino gave the police Mr. Dispennett's address, and he became the only suspect.

During the course of the investigation, police found a baseball cap with the words "Ferrell Gas" on it, and Ms. Murray confirmed that her attacker was wearing the cap when he entered her apartment. Ms. Murray also submitted to a sexual assault kit examination. The police obtained a search warrant to retrieve samples of petitioner's hair, blood, and fingerprints, as well as his hiking boots to compare with footprints found outside Ms. Murray's apartment. The sexual assault kit, fingerprints found on the windowsill, and shoe imprints were submitted to the state laboratory and compared with the samples taken from petitioner. None of the physical evidence connected petitioner to the crime. The hair samples from the baseball cap did not match, the fingerprints did not match, the boots were not related to the footprints, and the sexual assault kit DNA testing was inconclusive due to "insufficient quality of evidence."[1]

In preparation for trial, petitioner's attorney attempted to subpoena Ms. Murray's mental health records to determine the full extent of her mental disabilities in order to provide a basis to exclude the identification she made as being overly suggestive. Petitioner's attorney filed motions for discovery of the records, *in camera* review of the records, authorization to hire a psychologist to evaluate the records, and to exclude improper identification evidence. None of these efforts were successful. Ms. Murray testified at trial, and her in-court identification was

---

[1] As discussed below, the DNA recovered from the sexual assault kit has since been tested using the latest DNA technology and has revealed no evidence of male DNA or spermatozoa.

3 - OPINION AND ORDER

the only evidence to counter the exculpatory physical evidence. She was previously unable to identify petitioner in a photo lineup shown to her immediately after the attack. The jury found petitioner guilty of all charges, which included Sodomy, 1st Degree; Burglary, 1st Degree; Attempt to Commit Crime--Rape I; and Assault, 2nd Degree. Petitioner was sentenced to a total of 328 months of incarceration. Based on Oregon Department of Corrections ("ODOC") records, his projected release date is June 28, 2020.

### B.  Procedural Background

On direct appeal, petitioner argued that he was entitled to the victim's mental health records under Oregon statute and the Due Process clause of the United States Constitution. He also argued that state law provided for *in camera* review of the victim's mental health records. Finally, he argued that he had a constitutional entitlement to pre-trial review of the records under Pennsylvania v. Ritchie, 480 U.S. 39, 43-44 (1987).[2] All of these arguments were unsuccessful; petitioner's convictions were affirmed from the bench by the Oregon Court of Appeals without opinion, and the Oregon Supreme Court subsequently denied review. State v. Dispennett, 137 Or. App. 155 (1995), *review denied* 322 Or. 598 (1996). Petitioner raised issues of ineffective assistance of trial counsel during his state post-conviction proceedings, claiming that various errors made by counsel prejudiced his defense. The Oregon Court of Appeals affirmed

---

[2] In Ritchie, a plurality of the Supreme Court confined the right to confrontation to a trial right, which is designed to prevent improper restrictions on the types of questions that may be asked during cross-examination and preserve the ability to question adverse witnesses. 480 U.S. at 52-53. However, even though the Court declined to extend the protection of the Sixth Amendment to pretrial disclosure of privileged material, it held that the disclosure of privileged material for *in camera* review by the trial court was necessary to ensure the defendant's right to a fair trial under the Due Process clause. Id. at 57-58. Further, the Court allowed the review of such records because the statute included a general clause allowing the disclosure in limited circumstances, including when "directed to do so by a court order." Id.

without opinion, and the Oregon Supreme Court again denied review. Dispennett v. Thompson, 152 Or. App. 805, *review denied* 327 Or. 305 (1998). Petitioner's federal habeas petition was timely filed on October 13, 1998. In his Amended Petition for Writ of Habeas Corpus (#55) petitioner presents two grounds for relief:

> Ground One: The trial court violated [petitioner's] Fourteenth Amendment right to due process when the state trial judge denied [petitioner] access to the alleged victim's mental health and developmental disability files and further denied [petitioner's] motion for an *in c* competency to serve as a witness and/or exculpatory evidence, and;

> Ground Two: The trial court violated [petitioner's] Sixth Amendment right to a fair trial when the state court denied access to the victim/witness's mental health and disability records and further denied an *in camera* review of the records which prevented [petitioner] from being able to present a defense or engage in adequate cross-examination of the victim/witness.

## DISCUSSION

In the motion currently before this court, petitioner contends that he is entitled to an evidentiary hearing to further prove his claims because despite diligently pursuing his claims in state court, the state proceedings were inadequate to fully resolve them. Respondent argues that petitioner has procedurally defaulted the grounds alleged in his petition, and contends that granting an evidentiary hearing would be futile. Petitioner argues that the "cause and prejudice" and "fundamental miscarriage of justice" exceptions apply to excuse any procedural defaults. Further, petitioner seeks an evidentiary hearing on his claims for relief because significant new material exists that entitles him to an evidentiary hearing to further present those claims, if he is not otherwise accorded relief.

I.      **Procedural Default**

This case has been on several judges' dockets and in the court for many years, so there is some lingering confusion as to the viability of the petitioner's claims, which will be addressed below.

     A.      **Ground One**

In regard to Ground One, respondent concedes that petitioner has exhausted his available remedies. (#84 at 13.) Magistrate Judge Stewart made several recommendations regarding Ground One in her Findings and Recommendation dated August 23, 2004 (#194). First, petitioner's Ground One due process claim for personal review was procedurally defaulted because he explicitly limited his claim to the trial court's denial of an *in camera* records review, thereby failing to fairly present the claim to the Oregon state courts. (#194 at 5-7.) Second, petitioner's due process claim for *in camera* review by the trial court should survive in its entirety because petitioner did not limit his discovery requests solely to exculpatory statements made by the victim; rather, he sought review of the victim's mental health records in an attempt to discover anything that might be helpful to his case. (#194 at 7-8.) Judge Stewart also recommended refusing to allow the "cause and prejudice" exception to the procedural default of the due process claim based upon her personal review of the victim's records. (#194 at 9.)

No other judge has since discussed the viability of the Ground One claims. In a subsequent Order (#206), Judge Mosman declined to adopt the above findings and recommendations, for the reasons discussed below. It is not clear whether those reasons extended to the Ground One claims, or if they applied only to Ground Two.

**B.     Ground Two**

Petitioner at one time conceded that his Ground Two claim was procedurally defaulted because it was never presented to the Oregon courts. (#84 at 13.) However, when petitioner made this concession, he also argued that further discovery was necessary to enable him to show "actual innocence" in order to excuse this default. (Id.) Ultimately, Magistrate Judge Stewart granted the petitioner's motion for subpoenas to gain access to the victim's mental health records. (Id. at 29.) However, she explicitly limited review of those documents to *in camera* review by the court. Following an *in camera* review of the victim's records, Magistrate Judge Stewart determined that the records "contain no evidence tending to show recantation, accusation and identification of a perpetrator other than petitioner, no evidence of suggestibility, and no other exculpatory evidence which would have been material and relevant to prove misidentification by [the victim]." (#159 at 2-3.)

However, in her Findings and Recommendation dated August 23, 2004 (#194), Magistrate Judge Stewart reconsidered her earlier evaluation of the records and made several recommendations regarding petitioner's claim of "actual innocence." First, while she did not invalidate the state's determination of the victim's competence, she did recommend reopening the issue of suggestibility as it pertained to actual innocence. Magistrate Judge Stewart reasoned that in order to satisfy the requirements of due process, the mental health records should be reviewed by an expert since the court is not qualified to make psychological determinations about the victim based solely on its *in camera* review of her mental health records. Further, instead of allowing the release of the documents to an expert, Magistrate Judge Stewart recommended that

7 - OPINION AND ORDER

the parties brief the actual innocence issue based on the assumption that expert review would find evidence that the victim is suggestible.

However, in an Order dated February 17, 2005 (#206), Judge Mosman declined to adopt Magistrate Judge Stewart's Findings and Recommendations (#194) for several reasons. First, he did not agree that due process requires the victim's suggestibility be determined by a medical expert. (#206 at 3.) Judge Mosman reasoned that suggestibility is merely one way of assessing competency, which courts are well-equipped to evaluate. However, while Judge Mosman determined that a medical expert was not *required* in this case, he ordered that petitioner's attorney should be afforded an opportunity to review the records for evidence of the victim's suggestibility as it pertains to petitioner's claim of actual innocence. Accordingly, the court released the victim's mental health records to the attorneys for petitioner and respondent under a protective order.

Judge Mosman noted that the exception to procedural default hinges upon whether any new evidence of the victim's suggestibility based on her mental health records, when considered in light of all the evidence at trial, shows that petitioner is actually innocent. (#206 at 2-3.) Judge Mosman noted further that if petitioner succeeded at establishing that he fits within the "fundamental miscarriage of justice" exception to procedural default, the court would consider the merits of the defaulted claims. The parties were instructed to brief the court on the victim's suggestibility as it pertains to the petitioner's claim of actual innocence, as well as to the merits of petitioner's claims. What remains unresolved is whether the "fundamental miscarriage of justice" exception to procedural default, if established by petitioner, would apply to both of petitioner's grounds for relief, and thereby permit the court to consider the merits of both claims.

8 - OPINION AND ORDER

Following the release of the victim's mental health records to the attorneys, petitioner's attorney moved for leave to disclose the contents of the records to an investigator. That request was denied. (#213.) Petitioner's attorney later filed a motion to allow release of the victim's mental health records to a qualified expert under a protective order. (#219.) Judge Mosman denied petitioner's request because of his earlier finding that due process does not require the disclosure of the confidential documents to an expert. (#229.)

## II.  Evidentiary Hearing

With regard to petitioner's request for an evidentiary hearing, "[a] habeas petitioner must meet two conditions to be entitled to a federal evidentiary hearing: (1) allege facts which, if proven, would entitle him to relief, and (2) show that he did not receive a full and fair hearing in a state court, either at the time of the trial or in a collateral proceeding." Karis v. Calderon, 283 F.3d 1117, 1126-27 (9th Cir. 2002); Alberni v. McDaniel, 458 F.3d 860, 873 (9th Cir. 2006). The first prong commonly is referred to as the requirement of asserting a "colorable claim." Siripongs v. Calderon, 35 F.3d 1308, 1310 (9th Cir. 1994). The six factors identified in Townsend v. Sain, 372 U.S. 293, 312-313 (1963), inform the judicial evaluation of the second prong of this test. When any one or more of these factors is present, the state court trier of fact has not made reliable findings:

1. the merits of the factual dispute were not resolved in the state hearing;

2. the state factual determination is not fairly supported by the record as a whole;

3. the factfinding procedure employed by the state court was not adequate to afford a full and fair hearing;

4.  there is a substantial allegation of newly discovered evidence;

     5.     the material facts were not adequately developed at the state court hearing;

     6.     for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair hearing.

Id. at 313.

First, petitioner alleges facts which, if proven, would entitle him to relief. In regard to the DNA evidence that was recovered at the time of the crime, petitioner's counsel retained an expert to review the available evidence. (#240 at 16.) Petitioner submitted the expert's report, which confirms that the sample recovered is sufficient to be tested, and that the DNA sample does not link petitioner to the assault. (#242 at Exhibit 14.) However, the expert was only able to test extracted DNA from the oral swabs taken from the victim, as the original oral swabs and the hairs from the baseball cap could not be procured from the Oregon State Police Crime Laboratory. In addition, petitioner includes a sealed document (#243) summarizing the expected testimony of an expert regarding the reliability of the identification given by the victim. Because the victim's mental health records were released solely to counsel, petitioner has not had the opportunity to consult with an expert about their contents. (#243 at 1.) However, counsel has reviewed those records and presented this court with a thorough report on the issues and facts found within them, which if confirmed by an expert, would entitle the petitioner to relief.

Second, the crux of petitioner's claim is that he did not receive a full and fair hearing in state court, and that he diligently presented his claim that the victim's identification of him was inaccurate due to her disability. (#240 at 34.) The six Townsend factors are reiterated in Earp v. Ornoski, 431 F.3d 1158, 1166-67 (9th Cir. 2005), as the standard for determining whether the state court has not, after a full and fair hearing, reliably found the relevant facts. Id. at 1167. In Earp, the petitioner offered evidence to impeach a prosecution witness, which the petitioner

10 - OPINION AND ORDER

claimed was actually responsible for the rape and murder of the female toddler victim, in the form of a declaration of another jail inmate. Id. at 1168. The inmate's testimony was supported by other documentary evidence in the record, including the declaration of a defense investigator, the trial lawyer, and a partial transcript of the prosecutor's interview with him. Id. at 1168-69. When determining whether the petitioner alleged a colorable claim, the district court resolved witness credibility of the inmate against him, finding his testimony "inherently untrustworthy." Id. at 1169. "Because the veracity of the witnesses who signed the affidavits on which [petitioner] based his claim was at issue, the claim could not be adjudicated without an evidentiary hearing on this disputed issue of material fact." Id. at 1170. Without presenting live testimony, the district judge lacked the ability to evaluate the witness credibility; accordingly, the Ninth Circuit determined that the petitioner never had a full and fair hearing, and was entitled to one. Id.

The record in this case demonstrates that petitioner has diligently sought to develop evidence in support of his claims and to access the material and experts necessary to support those claims, beginning at the time of trial and throughout the state appellate and post-conviction proceedings. However, until this court ordered their disclosure, petitioner was consistently denied the opportunity to access those records. Further, given that there was scant physical evidence available at trial, petitioner's conviction depended heavily upon the victim's identification of petitioner as her attacker. Of further significance is the fact that the victim was mentally disabled and only identified petitioner after his name was suggested to her. Therefore, given the victim's mental disability and the importance of her identification of him as her attacker, information about her competence was significant to the petitioner in preparing his defense. Nevertheless, the state court consistently denied petitioner's trial counsel access to this

information. Such action amounted to petitioner being denied an opportunity to develop the facts which would entitle him to relief. Accordingly, the hearings conducted by the state court were not adequate to provide a full and fair hearing to petitioner and an evidentiary hearing is needed to allow him to further develop those claims.

## CONCLUSION

Given the specter of procedural default looming over this case and petitioner's need to establish "actual innocence" in order to keep at least one of his claims viable, the court requires more information than the petitioner is able to provide at this point, given his very restricted access to the victim's mental health records. Therefore, an evidentiary hearing is necessary to give him a fair opportunity to establish "actual innocence" sufficient to overcome the procedural default. In submitting the current motion, petitioner appears to have thoroughly examined the victim's mental health records and has prepared for the court a lengthy description of what counsel expects an expert to find. However, without an expert actually examining the records, not much more can be learned about the victim's competence, which may directly bear upon petitioner's "actual innocence."

Therefore, after thoroughly reviewing the record, including the documents submitted to the court under seal, I conclude that the mental health records of the victim should have been disclosed to an expert who could evaluate the victim's ability to function as a witness at the state trial. Furthermore, I conclude that in this case the Sixth Amendment's Confrontation Clause, and the Fourteenth Amendment's Due Process Clause, both important rights guaranteed by the United States Constitution, trump the privilege asserted by the state to protect the privacy of a witness who was committed to a mental health institution. Accordingly, it is the order of this court that

the victim's sealed mental health records shall be made available to petitioner's counsel, so that she can obtain an expert to evaluate the victim's competency as a witness.

While I am granting petitioner's motion for an evidentiary hearing, it should be noted that the only possible merit under consideration is whether the trial court erred by failing to produce the mental health records to evaluate the victim's competence. I will not grant habeas review regarding the victim's credibility.

Prior to trial, petitioner's trial counsel filed multiple motions seeking access to mental health records pertaining to the victim. Though counsel filed a motion for a hearing to determine the competency of the witness (#242 at Petitioner's Exhibit 7), the record does not reflect any further discussion of the victim's competency until the trial began. The trial court issued an opinion letter denying the production of the victim's mental health records, but never addressed counsel's motion for a competency hearing. (#242 at Petitioner's Exhibit 9). At trial, the judge allowed the victim to testify. The only discussion in the record of the victim's competency came after an objection by petitioner's trial counsel, whereupon there was a bench discussion, followed by the following exchange:

> THE COURT: The question at this time, Ms. Aiken, is, do you have an objection to this witness' further testimony?
>
> MS. AIKEN: Your Honor, I just ask that the Court make a ruling on the motion which we had filed pretrial, and this was the way it was to be accommodated. So if you want to make that for the record, that's fine.
>
> THE COURT: Okay. I find this witness competent to testify.

13 - OPINION AND ORDER

(Tr. at 238.) Other than this short exchange, there is no further discussion of the victim's competence to testify, despite trial counsel's diligence in pursuing the issue. Regrettably, the trial court conducted no meaningful hearing to assess the victim's competency.

It is clear to me that the victim's background raises numerous questions as to her competency that need not be related here. Further, my review of the trial record raises several questions as to the victim's competency to testify. During her testimony at trial, the victim was subject to multiple leading questions by the prosecutor, received constant validation of her testimony by the prosecutor, and often made irregular, incoherent responses to questions asked by counsel. For example, when being questioned about the attack, the victim answered, "Boy, this is fun," and "Boy, I'm happy." (Tr. at 239, 244.) The victim testified that she was "really happy" when describing how she felt after her sexual assault exam. (Tr. at 254.) However, the police officer who accompanied her home after the exam described her as very upset, crying, and her "moods would alternate between crying and being angry about what happened." (Tr. at 516-517.) When asked a question by the prosecutor, the victim responded with, "Yes, mother. Yes, dear. I mean yes, Diane. I'm sorry." (Tr. at 248.) While responding to a question about telling the truth, the victim said, "Boy that coffee tasted good." (Tr. at 236.) These are just a few examples of the irregular testimony given by the victim at trial. Given that this was a case where the victim's testimony about her memory of the attack and her identification of her attacker was critical, her competency was an issue of utmost importance.

Finally, because I am granting petitioner's motion for an evidentiary hearing (#241), petitioner may also present any relevant expert testimony and reports dealing with the DNA evidence at issue in this case, including the hair sample and oral swabs obtained as part of the

state prosecution. Given the recent improvements in DNA analysis, it is appropriate to re-examine this issue in open court.

For the reasons set forth above, the Motion for an Evidentiary Hearing pursuant to Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts (#241) is GRANTED.

IT IS SO ORDERED.

DATED this 28th day of September, 2007.

/s/ Robert E. Jones
ROBERT E. JONES
U.S. District Judge