IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| RALPH DISPENNETT, | ) | Case No. 3:98-cv-1252-JO |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| DAVID COOK, Director, Oregon Department | ) | |
| of Corrections, | ) | |
| | ) | |
| Respondent. | ) | |

C. Renee Manes
Barbara L. Creel
FEDERAL PUBLIC DEFENDER'S OFFICE
101 S.W. Main Street, Suite 1700
Portland, OR  97204

  Attorneys for Petitioner

Thomas J. Castle
Douglas Park
DEPARTMENT OF JUSTICE
Trial Division, Corrections Litigation
1162 Court Street N.E.
Salem, OR  97301-6313

  Attorneys for Respondent

JONES, Judge:

Petitioner, who is currently in the custody of the Oregon Department of Corrections,

brings this action seeking a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. He is

challenging his underlying convictions for Sodomy, Burglary, Assault and Attempted Rape on

the basis that they violate his rights under the Sixth and Fourteenth Amendments. On February

23, 2011, I held an evidentiary hearing so that petitioner could further develop the factual basis

of his claims for relief and his claim of actual innocence. Both parties submitted post- hearing

briefs. For the reasons set forth below, petitioner's amended petition for a writ of *habeas corpus*

(#55) is denied.

A.    **Factual Background**

The victim, Pamela Murray, is a mentally impaired woman who was 41 years old at the

time of the trial in this matter. In the early morning on September 2, 1993, a man entered her

apartment through her open window and sexually assaulted her. Murray's neighbors, Kathy

Roundtree and Herman Andino, heard noises coming from her apartment and called the police.

According to the 911 transcript, Murray did not know her attacker. After the police arrived, she

told them that a man "tried to rape" and "hurt" her, and she gave a generalized description of him

to the police. Murray described her assailant as a white male with blonde hair in a ponytail, blue

shirt, blue jeans, and white tennis shoes. The officer responding to the scene reported that she

said that she knew the man but could not remember his name. She said that she thought he was

the same one who worked at a nearby gas station. According to the officer's report, Ms.

Roundtree then asked Murray if she meant "Butch" and Murray responded that she did. From

that point onward, the report refers to the suspect as "Butch," which was a nickname of the

petitioner, Ralph Dispennett. Mr. Andino gave the police Mr. Dispennett's address, and petitioner became the only suspect.

During the course of the investigation, police found a baseball cap with the words "Ferrell Gas" on it, and Murray confirmed that her attacker was wearing the cap when he entered her apartment. Murray also submitted to a sexual assault kit examination. The police obtained a search warrant to retrieve samples of petitioner's hair, blood, and fingerprints, as well as his hiking boots to compare with footprints found outside Murray's apartment. The sexual assault kit, fingerprints found on the windowsill, and shoe imprints were submitted to the state laboratory and compared with the samples taken from petitioner. None of the physical evidence connected or disconnected petitioner to the crime.

In preparation for trial, petitioner's attorney attempted to subpoena Murray's mental health records to determine the full extent of her mental disabilities in order to provide a basis to challenge her competency to testify or to exclude the identification she made as being overly suggestive. Petitioner's attorney filed motions for discovery of the records, *in camera* review of the records, authorization to hire a psychologist to evaluate the records, and to exclude improper identification evidence. The trial court denied petitioner's motion for access to the Murray's mental health records on the grounds that mental health records are confidential under Oregon statutes and the statute allowed for no exceptions. Murray testified at trial, and her in-court identification was the main evidence presented by the prosecution. The jury found petitioner guilty of all charges, which included Sodomy, 1st Degree; Burglary, 1st Degree; Attempt to Commit Crime—Rape I; and Assault, 2nd Degree. Petitioner, having previously been convicted on Rape, 1st Degree in a prior case, was sentenced to a total of 328 months of incarceration.

Based on Oregon Department of Corrections ("ODOC") records, his projected release date is June 28, 2020.

### B.   Procedural Background

On direct appeal, petitioner argued that he was entitled to the victim's mental health records under Oregon statute and the Due Process clause of the United States Constitution. He also argued that state law provided for *in camera* review of the victim's mental health records. Finally, he argued that he had a constitutional entitlement to pre-trial review of the records under Pennsylvania v. Ritchie, 480 U.S. 39, 43-44 (1987). All of these arguments were unsuccessful; petitioner's convictions were affirmed from the bench by the Oregon Court of Appeals without opinion, and the Oregon Supreme Court subsequently denied review. State v. Dispennett, 137 Or. App. 155 (1995), *review denied* 322 Or. 598 (1996). Petitioner raised issues of ineffective assistance of trial counsel during his state post-conviction proceedings, claiming that various errors made by counsel prejudiced his defense. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court again denied review. Dispennett v. Thompson, 152 Or. App. 805, *review denied* 327 Or. 305 (1998).

In his Amended Petition for Writ of Habeas Corpus (#55) in federal court, petitioner presents his grounds for relief:

> Ground One: The trial court violated [petitioner's] Fourteenth Amendment right to due process when the state trial judge denied [petitioner] access to the alleged victim's mental health and developmental disability files and further denied [petitioner's] motion for an *in camera* review of the records to determine competency to serve as a witness and/or exculpatory evidence, and;
>
> Ground Two: The trial court violated [petitioner's] Sixth Amendment right to a fair trial when the state court denied access to the victim/witness's mental health and disability records and further denied an *in camera* review of the records which prevented

[petitioner] from being able to present a defense or engage in adequate cross-examination of the victim/witness.[1]

Magistrate Judge Stewart found that petitioner properly exhausted only a part of his Ground One claim in the Oregon state courts, namely whether his Fourteenth Amendment right to due process was violated by denying *in camera* access to the victim's mental health and developmental disability records. Judge Stewart found that although petitioner presented the remaining Ground One issue (direct access by petitioner to the mental health records) at the State trial court level, he failed to raise it on appeal and thus the issue was procedurally defaulted. She recommended refusing to allow the "cause and prejudice" exception to the procedural default of the direct access due process claim. As to petitioner's use of the "actual innocence" exception to procedural default, Judge Stewart recommended granting the petitioner's motion for subpoenas to gain access to the victim's mental health records in order to explore the issue of the victim's suggestibility. In agreeing to grant petitioner access to the victim's mental health records, Judge Mosman stated that, "whether petitioner can excuse his procedural default hinges on whether new evidence of the victim's suggestibility contained in her mental health records, when considered in light of all the evidence adduced at trial, shows that petitioner is actually innocent of the underlying crimes." (#206 at 4). Following the release of the victim's mental health records, petitioner was granted an evidentiary hearing to give him a chance to establish "actual innocence" sufficient to overcome the procedural default.

At the evidentiary hearing I conducted, petitioner's expert, Dr. Fulero, not surprisingly testified that eyewitness identification is often unreliable and that individuals with developmental

---

[1] Petitioner at one time conceded that his Ground Two claim was procedurally defaulted because it was never presented to the Oregon Courts. (#84 at 13.) However, when petitioner made this concession, he also argued that further discovery was necessary to enable him to show 'actual innocence" in order to excuse this default. (Id.) My analysis regarding "actual innocence" for petitioner's Ground One claim also applies to petitioner's Ground Two claims.

disabilities and mental retardation tend to be less accurate and more susceptible to suggestion. In addition, Dr. Fulero noted that when post-event information involves a person with whom the individual is already familiar, there is a great likelihood of post-event transference. Dr. Fulero contended that access to the mental health records of the eyewitness could be critical to enable an expert to provide assistance to defense counsel in preparing to rebut the eyewitness testimony. There was no evidence in Murray's mental health records that she recanted her identification of petitioner or identified anyone other than petitioner as her assailant. To be sure, the records revealed this vulnerable victim suffered from mental disability, but not legal incompetency.

### C.    Petitioner's Ground One (direct access) and Ground Two Claims

#### (1) Exhaustion of Remedies

A petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of habeas corpus claims pursuant to 28 U.S.C. § 2254. Rose v. Lundy, 455 U.S. 509, 519 (1982). A state prisoner has not fairly presented his federal claims to a state court unless he has referenced specific provisions of the federal constitution or statutes, or cited to federal case law. Lyons v. Crawford, 232 F.3d 666, 670 (9th Cir. 2000) *as modified by* 247 F.3d 904 (9th Cir. 2001). A petitioner must have also presented his claim in a procedural context in which its merits will be considered. Castille v. Peoples, 489 U.S. 346, 351 (1989). A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. Coleman v. Thompson, 501 U.S. 722, 750 (1991); Edwards v. Carpenter, 529 U.S. 446, 451 (2000). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or

makes a colorable showing of actual innocence.  Gray v. Netherland, 518 U.S. 152, 162 (1996);

Sawyer v.Whitley, 505 U.S. 333, 337 (1992); Murray v. Carrier, 477 U.S. 478, 485 (1986).

As noted above, Judge Stewart previously refused to allow the "cause and prejudice"

exception and that leaves petitioner with the task of showing "actual innocence" before we will

review his procedurally defaulted claim.

### (2)  Actual Innocence

#### (a)  Legal standard

In Schlup v. Delo, 513 U.S. 298 (1995), the Supreme Court addressed the process by

which state prisoners may prove "actual innocence" so as to excuse a procedural default.  The

Court explained that in order to be credible, a claim of actual innocence "requires petitioner to

support his allegations of constitutional error with new reliable evidence—whether it be

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—

that was not presented at trial."  Id. at 324; Downs v. Hoyt, 232 F.3d 1031, 1040 (9th Cir. 2000),

cert. denied, 532 U.S. 999 (2001).  The Ninth Circuit has held that "habeas petitioners may pass

Schlup's test by offering 'newly presented' evidence of actual innocence."  Griffin v. Johnson,

350 F.3d 956, 963 (9th Cir. 2003).  The meaning of "newly presented" evidence is evidence that

was not before the trial court.  Id.

Ultimately, petitioner must prove that it is more likely than not that no reasonable juror

would have found him guilty beyond a reasonable doubt.  Schlup, 513 U.S. at 327-28; Bousley v.

United States, 523 U.S. 614, 623 (1998); Downs, 232 F.3d at 1040.  In making this

determination, this court "must assess the probative force of the newly presented evidence in

connection with the evidence of guilt adduced at trial."  Schlup, 513 U.S. at 332.

In assessing the adequacy of petitioner's showing, the court is not bound by the rules of admissibility that would govern at trial.  "Instead, the emphasis on 'actual innocence' allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial." Schlup, 513 U.S. at 327.  "The habeas court must make its determination concerning the petitioner's innocence in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." Id. at 328 (internal quotations omitted).

In rebutting petitioner's claim of actual innocence, respondent is not limited to the existing record and is permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented at trial.  See Bousley, 523 U.S. at 624 (addressing state's rebuttal in guilty plea case).

### (b)   New facts adduced at the evidentiary hearing

Three witnesses testified at the evidentiary hearing: two for the respondent (Diana Moffat, the prosecutor from the trial and Dr. Lorah Sebastian, a forensic psychologist) and one for petitioner (Dr. Solomon Fulero, a psychologist and attorney.)  Dr. Sebastian and Dr. Fulero reviewed Murray's mental health records.  The evidence adduced from these witnesses during the evidentiary hearing shows the following:  (1) Prior to the trial, Ms. Moffat was aware of Murray's mental disability and that Murray's competency to testify would be an issue; (2) Ms. Moffat worked with Murray to help her overcome her nervousness and fear about testifying; (3) Ms. Moffat knew nothing about alleged prior claims of sexual assault made by Murray; (4) Murray suffers from mental illness and because of that, she is less accurate in the accounts she gives and more susceptible to suggestion; (5) Had petitioner been allowed access to Murray's

mental health records, petitioner's defense attorney could have further challenged the victim's competency to testify; and, (6) Had petitioner been allowed access to the victim's mental health records, petitioner's defense attorney could have enlisted experts to testify as to the stages of memory, post-event information, unconscious transference, and the unreliability of eye witness testimony in order to help the jury analyze those issues.

### (c) Discussion

Petitioner contends that Murray wasn't competent to testify and without her identification, there would be no evidence that petitioner perpetrated the crime. Rule 601 of the Oregon Evidence code provides that "any person who, having organs of sense can perceive, and perceiving can make known the perception to others, may be a witness." The rule "establishes a liberal standard for competency of witnesses." State v. Sullivan, 217 Or. App. 208, 212 (2007)(quoting Laird C. Kirkpatrick, Oregon Evidence § 601.03(1)). Murray was vigorously cross-examined at length and exhibited only some lack of recall. Nothing demonstrated that she was unable to perceive or make her perception known to others. Given the liberal standard set out in Rule 601 and the lack of evidence proving Murray unable to perceive or to make her perceptions known to others, I find that Murray was competent to testify in at trial.

Petitioner also contends that his defense counsel's trial tactics might have been different had his trial counsel had access to Murray's mental health records and the jury might have analyzed the reliability[2] of her testimony differently. When she was questioned on direct and cross-examination, Murray revealed her mental health issues and the jury was aware of her mental status. Petitioner's speculation as to whether the jury might have analyzed Murray's testimony differently does not prove "actual innocence." The new evidence offered here does not provide exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical

---

[2] Petitioner also uses the terms accuracy and competency.

evidence to show someone other than petitioner perpetrated the attack on this victim. There is no showing of Murray recanting her accusation or identifying a perpetrator other than petitioner, and no other exculpatory evidence which is material and relevant to prove misidentification. The new evidence falls short of the standard required to prove "actual innocence." I find petitioner has not excused his procedural default as to Claim One (direct access) and Claim Two (direct access and *in camera* access).

### D.    Petitioner's Ground One (*in camera*) Claim

Pursuant to § 2254(d)(1), if a claim has been "adjudicated on the merits in State Court proceedings", the application "shall not be granted with respect to [such a] claim ... unless the adjudication of the claim ... resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, 131 S. Ct. 1388 (2011).

Petitioner contends that Pinholster's limitation is not applicable because the issue whether to grant petitioner access to Murray's mental health records was never adjudicated in state court and is a new claim. Therefore, new evidence from the evidentiary hearing can be considered in determining whether the decision not to provide access to Murray's mental health records was contrary to clearly established Federal law.

In Cullen v. Pinholster, 131 S. Ct. 1388 (2011), the petitioner, Pinholster, was convicted of two counts of first-degree murder. During the penalty phase of the trial, the only witness called by defense counsel to provide mitigating evidence was Pinholster's mother, even though counsel consulted a psychiatrist who diagnosed Pinholster with antisocial personality disorder.

During the state habeas petition, Pinholster's new counsel alleged that prior counsel failed to adequately investigate and present mitigating evidence, including evidence of petitioner's mental disorders during the penalty phase of the trial. Pinholster supported this claim with school, medical, legal records and a declaration from a psychiatrist who diagnosed Pinholster with bipolar mood disorder and seizure disorders. The California Supreme Court denied Pinholster's penalty-phase ineffective-assistance claim. In his federal habeas petition, Pinholster reiterated his previous allegations about penalty-phase ineffective-assistance and added new allegations that his trial counsel had failed to furnish psychiatric background materials to the original psychiatrist. The federal petition was held in abeyance to allow Pinholster to go back to state court where he presented the psychiatrist's declaration and where the California Supreme Court again denied the petition on the substantive ground that it was without merit. Back in federal court, Pinholster was granted an evidentiary hearing where he presented evidence from two new doctors, a psychiatrist and a pediatric neurologist. Based on that new evidence, the District court granted habeas relief. The Ninth Circuit (en banc) determined that the hearing was not barred by 28 U.S. C. § 2254(e)(2) and the new evidence from the hearing could be considered in assessing whether the California Supreme Court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law" under § 2254(d)(1). The Supreme Court overturned the Ninth Circuit's decision, ruling that "evidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254 (d)(1) on the record that was before that state court." Id. at 1400.

In this case, petitioner filed motions in state trial court requesting access to Murray's mental health records in order to explore Murray's competency to testify and to determine

whether the identification made by Murray was solicited from her or was unduly suggestive due to her mental disabilities. The trial court denied the motion based on the grounds that mental health records are confidential under Oregon statutes and the statute allowed for no exceptions. Petitioner's claim was adjudicated on the merits, and the holding in Pinholster applies.

Thus, we look at the record that was before the state court to determine if the denial of petitioner's request for an *in camera* review of the victim's mental health records resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States. Petitioner claims that the failure to provide the mental health records was a violation of federal law clearly established in either Brady v. Maryland, 373 U.S. 83 (1963) or Pennsylvania v. Ritchie, 480 U.S. 39 (1987).

As to petitioner's claim that the mental health records are within the disclosure requirements of Brady v. Maryland, 373 U.S. 83 (1963), I agree with Judge Stewart reasoning that

> Brady and its progeny do not establish a right to discover privileged information from third parties who are not associated with the criminal defendant's prosecution. There is no evidence in this case that the state or anyone associated with the prosecution ever possessed the records sought by petitioner. In fact, state prosecutors are not allowed access to the [mental health] files. Instead, petitioner was denied access to those records because the trial court denied his motions for production.

(#84 at 24). The decision not to disclose the mental health records was not contrary to the clearly established Federal law expressed in Brady.

Petitioner also claims that the mental health records should have been disclosed pursuant to Pennsylvania v. Ritchie, 480 U.S. 39 (1987), where the Supreme Court held that disclosure of privileged records to the trial judge for *in camera* inspection was necessary to ensure the defendant's right to a fair trial under the Due Process Clause. Id. at 57-58. The petitioner in

Ritchie sought access to a confidential Children and Youth Services file. The Pennsylvania confidentiality statute at issue was not absolute and did not prohibit access to privileged records at all times. Because the statute was not absolute, petitioner's due process claim trumped the confidentiality statute and petitioner was granted *in camera* access to the records he sought. However, the Supreme Court specifically left open the question whether due process claims trump access to privileged records where the rule denying disclosure of those records is absolute. "We express no opinion on whether the result in this case would have been different if the statute had protected the [privileged records] from disclosure to *anyone*, including law-enforcement and judicial personnel." Id. at 57 n. 14 (emphasis in original).

Here, Judge Stewart determined that an *in camera* review of the mental health records was not appropriate under Ritchie because some of the records petitioner sought were protected by the psychotherapist-patient privilege, and psychotherapist-patient privilege is an absolute privilege. I agree with Judge Stewart. The psychotherapist-patient privilege is an absolute privilege and therefore, does not entitled petitioner to an *in camera* review of Murray's mental health records pursuant. Because the Court in Ritchie specifically limited its holding to records that are not subject to a claim of absolute privilege, petitioner cannot obtain relief because there is no clearly established U.S. Supreme Court law entitling him to an *in camera* review.

### E.   Conclusion

Petitioner (1) has not excused his procedural default as to his Sixth Amendment claims and his Fourteenth Amendment Claim for direct access to Murray's mental health records and (2) is not entitled to an *in camera* review of Murray's mental health records. Judge Stewart and I undertook a thorough review of the mental health records finding nothing that would help petitioner's cause. There is no dispute that the records contained evidence of the extent to which

Murray suffers from a mental impairment, the records contained no evidence that Murray was not competent to testify as a witness.  Petitioner has presented no evidence tending to show recantation or accusation and identification of a perpetrator other than the justly convicted petitioner.

Petitioner's writ is denied.


IT IS SO ORDERED.

DATED this _____ day of April, 2013.




Robert E. Jones
Senior United States District Judge